JOANOS, Judge.
Florida Power Corporation (employer), a self-insured employer, appeals a workers’ compensation order awarding Fred Hamilton, the claimant/employee (claimant) temporary total disability benefits, penalties, interest, and costs. The employer contests the compensation order on the following grounds: (1) the judge’s finding that the prior reversed order is the law of the case; (2) the judge’s finding as to the date of maximum medical improvement; (3) the judge’s finding that claimant was temporarily, totally disabled; (4) the judge’s failure to address Dr. Newman’s findings; and (5) the award of penalties. Claimant cross-appeals the failure of the judge of compensation claims to award temporary total disability benefits for the period of time which preceded the employer’s notice to claimant of his obligation to perform a job search. We affirm in part and reverse in part.
The subject accident occurred June 1, 1987, when claimant injured his back while working in construction. On January 7, 1988, he underwent surgery for excision of a herniated disc between L-5 and L-6. Dr. Faris, claimant’s treating orthopedic surgeon, opined that claimant reached maximum medical improvement on March 16, 1988, with a fifteen percent permanent impairment of the body as a whole. Although the surgery relieved the claimant’s sciatic pain, he continued to complain of back pain. These complaints were substantiated by objective findings of muscle spasm and limited range of motion in claimant’s back. Diagnostic tests revealed continued bulging in the area of the surgery, but Dr. Faris concluded that claimant would not benefit from further surgery. In December 1989, Dr. Faris indicated that *1262 claimant was not capable of gainful employment.
In 1991, Dr. Faris imposed the same restrictions on claimant’s activities as he had in 1988, ie., no lifting in excess of twenty-five pounds and no repetitive bending and twisting. In addition, claimant was directed to change position frequently and to lie down every two hours. Dr. Faris again opined that claimant’s condition had not improved since the surgery, and he was not capable of gainful employment.
In February 1988, the employer referred claimant to Mr. Freeman, a vocational rehabilitation specialist. Mr. Freeman testified that there were very few jobs within claimant’s physical and skill limitations, and he did not think any employer would permit claimant to lie down every two hours. Mr. Freeman expressed reservations about claimant’s ability to work full-time, even at a sedentary job.
Gerald Wili, a vocational evaluator, testified at the May 1991 hearing before Judge of Compensation Claims Douglas. Mr. Wili conducted an evaluation in claimant’s home on May 17, 1988. He stated that claimant was consistent in his efforts and did well on the testing, but he had to take frequent breaks to lie down. The intelligence portion of the evaluation was conducted while claimant was lying in bed. According to Mr. Wili, there are no jobs available that claimant can do if he has to lie down every two hours.
During his deposition taken in February 1991, claimant stated he had been submitting job search forms to the employer and had checked the newspaper for job vacancies, but he had made no telephone calls about any jobs. Claimant said Dr. Faris instructed him not to work. However, claimant also acknowledged that he was aware that, at some point, Dr. Faris released him to light duty work. Claimant further stated that Dr. Newman told him he could perform light duty work, with lifting restrictions of twenty pounds, and no sitting, standing, or bending for long periods.
On August 6, 1991, claimant was evaluated by Dr. Cauthen, a neurological surgeon, at the request of the judge of compensation claims. Dr. Cauthen diagnosed claimant’s condition as:
Degenerative disc disease; status post lumbar laminotomy, L5-L6, 1/7/88; probable unstable spine, L5-L6; chronic recurring lumbar pain related to 1, 2 and 3.
The neurosurgeon recommended further evaluation with Dr. Sutterlin, to include lumbar discography, to determine the current status of the degenerative disc partially removed at L5-L6.
Dr. Sutterlin, orthopedic spinal surgeon, examined claimant on May 21, 1992. He diagnosed claimant as having degenerative disc disease of the lumbar spine, with post-laminectomy syndrome. Dr. Sutterlin concluded that claimant might be a candidate for surgical fusion, with a fifty-fifty chance of success. He opined that claimant could attempt to work full-time with the same restrictions as had been imposed previously by Dr. Faris. Dr. Sutterlin concluded that claimant had reached maximum medical improvement, but could not establish a date other than the date of his evaluation, which was Dr. Sutterlin’s first contact with claimant.
In letters dated April 13, 1988, May 8, 1991, and January 3, 1992, the employer advised claimant of his possible entitlement to wage loss benefits and of his obligation to perform a job search. The pretrial stipulation indicates that claimant received temporary total disability and wage loss benefits from the date of accident until October 4, 1988.
On February 19, 1992, Judge Douglas issued an order awarding temporary total disability benefits from November 1, 1988, through the date of the order and continuing for so long as claimant remained disabled, and directing the employer to provide the testing procedures recommended by Dr. Cauthen. Judge Douglas declined to accept the parties’ stipulation as to the date of maximum medical improvement, finding that claimant remained temporarily totally disabled at that time. The employer appealed the 1992 order. On April 8, 1993, this court reversed, because the judge awarded a class of benefits that claimant did not specifically request. The court also held that “[t]he *1263 judge was entitled to reject the stipulation as to maximum medical improvement upon the receipt of contrary evidence.” Florida Power Corp. v. Hamilton, 617 So.2d 333, 334 (Fla. 1st DCA 1993) (Hamilton I).
Upon remand of this cause, the parties entered into a pretrial stipulation which states that claim was made for temporary total disability benefits from November 1, 1988, to the present and continuing, penalties and interest, costs, and attorney’s fees. The employer raised defenses of inadequate job search, voluntary limitation of income/employment, claimant is capable of light duty employment, and claimant was not temporarily totally or partially disabled during the claimed period. The record contains requests for wage loss benefits and notices of denial of wage loss benefits from January 4, 1988, through October 8, 1993.
On February 15, 1994, Judge of Compensation Claims Hudson issued the order giving rise to this appeal. The judge found that the claim for temporary total disability benefits was clearly placed in issue at the hearing of November 30,1993, as was claimant’s entitlement to benefits for the period of February 19, 1992, through September 29, 1993. The judge agreed with Judge Douglas’ earlier findings that claimant was still in a phase of diagnostic testing for the period of November 1, 1988, through February 19, 1992, and was entitled to temporary total disability benefits for that period. Since the record did not contain a notice that temporary total disability was timely controverted, the judge found that penalties were due on this class of benefits.
The judge further found that due to claimant’s decision to reject further surgery, the date of maximum medical improvement should be established as May 21, 1992, the date fixed by Dr. Sutterlin.[1] The judge also found that during the period following May 21, 1992, claimant’s physicians considered him capable of full-time light duty employment with restrictions. Therefore, in order to demonstrate entitlement to ongoing benefits, claimant was required to perform a job search. Since claimant failed to conduct an adequate job search, the judge denied and dismissed with prejudice the claim for wage loss benefits from May 22, 1992, through September 29, 1993.
Turning to the first issue, the general rule is that questions of law “which have been decided by the highest appellate court become the law of the case which, except in extraordinary circumstances, must be followed in subsequent proceedings, both in the lower and the appellate courts.” Brunner Enterprises, Inc. v. Department of Revenue, 452 So.2d 550, 552 (Fla.1984). The employer’s position is that, if applicable, the law of the case doctrine is subordinate to the rule that a remanded workers’ compensation order usually places the case in the position it would have been in if the order had never been entered. See Turner v. Rinker Materials, 622 So.2d 80, 83 (Fla. 1st DCA 1993). Unless the appellate court expressly restricts the matters to be addressed on remand, a judge of compensation claims may exercise discretion “to allow additional testimony, or to reconsider the evidence previously received in light of the appellate decision.” Id.
A review of the order giving rise to the first appeal of this cause, together with the opinion which reversed that order, demonstrates the propriety of the determination that the prior ruling on this point, which was subsequently affirmed on appeal, is the law of the case as to that question. The prior order indicates Judge Douglas based his rejection of the stipulation on Dr. Cauthen’s opinion that claimant may have an unstable spine, and the doctor’s recommendation for further testing to determine whether claimant should undergo a surgical fusion. The order also states that Dr. Cauthen’s opinion was “well substantiated by the totality of the medical evidence in this file.” In the prior opinion, the court recognized that Judge Douglas received evidence contrary to the stipulated date of maximum medical improvement, and expressly approved the rejection of the stipulation on that ground. 617 So.2d at 334.
*1264 We conclude that Judge Hudson considered the evidence previously submitted, together with additional evidence, in the manner contemplated by Turner v. Rinker Materials. That is, although concluding the original ruling as to the date of maximum medical improvement was the law of the case, the judge made an independent determination as to the specific date of maximum medical improvement based on the record as a whole. We decline to disturb that ruling.
The second issue concerns the propriety of Judge Hudson’s determination of May 21,1992, as the date of maximum medical improvement. Maximum medical improvement marks the date at which recovery or lasting improvement from an injury can no longer be anticipated. Scotty’s, Inc. v. Sarandrea, 645 So.2d 121 (Fla. 1st DCA 1994); Jackson v. Columbia Pictures, 610 So.2d 1349, 1350 (Fla. 1st DCA 1992). The determination of maximum medical improvement is essentially a medical question. Southeast Recycling v. Cottongim, 639 So.2d 155, 157 (Fla. 1st DCA 1994). A judge of compensation claims ought not accept a stipulation as to a date of maximum medical improvement, if the evidence is at variance with the stipulation and shows good cause for modification of the stipulated date. Special Disability Trust Fund v. Myers, 492 So.2d 788, 789 (Fla. 1st DCA 1986).
The record in this case contains conflicting evidence with respect to maximum medical improvement. Dr. Faris placed claimant at maximum medical improvement as of March 16, 1988. Dr. Newman’s office note (which was attached to Dr. Cauthen’s deposition), indicates Dr. Newman agreed with Dr. Faris that claimant had reached maximum medical improvement, with a fifteen percent permanent impairment. Dr. Cauthen, neurological surgeon, reviewed claimant’s medical records and conducted an evaluation of claimant at the request of Judge Douglas, who issued the order appealed in Hamilton I. Dr. Cauthen concluded claimant might have an unstable spine and recommended testing to determine whether he was a candidate for surgical fusion. The recommended testing was performed by Dr. Sutterlin on May 21, 1992. Dr. Sutterlin advised claimant that he had a fifty-fifty chance of improvement with surgical fusion.
Based upon Dr. Sutterlin’s recommendation, claimant lost fifty pounds in preparation for the back surgery. After his weight loss, claimant decided against further surgery at that time, due in part to the poor result from the 1988 surgery. Dr. Sutterlin found claimant’s decision reasonable, especially in view of the risk involved. According to Dr. Sut-terlin, without further surgery, claimant was at maximum medical improvement on the date of his evaluation.
Dr. Sutterlin’s testimony on this point is competent substantial evidence which supports Judge Hudson’s finding that claimant reached maximum medical improvement on May 21, 1992, the date of Dr. Sutterlin’s evaluation and recommendation for possible surgery. Dr. Sutterlin’s conclusion that it was unlikely claimant would experience further improvement was predicated on claimant’s decision against the proposed surgical fusion. Since the medical evidence indicated claimant’s condition might be improved by surgery, a date of maximum medical improvement could not be fairly determined until claimant reached a decision as to the proposed surgery.
The employer’s third issue concerns the judge’s determination regarding periods of temporary total disability. Entitlement to temporary total disability benefits can be shown by medical evidence of an inability to work, or by evidence of a good faith, albeit unsuccessful, work search. State v. Vice, 601 So.2d 1294, 1295 (Fla. 1st DCA 1992). In this regard, the medical evidence in this case indicated that claimant could attempt light duty work within the restrictions outlined by his treating physician. The medical opinions concerning claimant’s ability to work were based in part, on objective findings of muscle spasms and disc bulging, together with claimant’s subjective pain complaints, and his stiff-legged gait and wide-legged stance. Further, two vocational experts expressed serious reservations about possible employment for claimant, reasoning it was unlikely that any employer would per *1265 mit claimant to lie down every two hours, in accordance with his physician’s instructions.
The employer contests the temporary total disability determination, primarily due to the claimant’s failure to conduct a work search. While it is undisputed that claimant did not conduct an adequate work search, the medical evidence of claimant’s ability to perform even light duty work is equivocal, at best. The office notes of claimant’s treating physician reflect periods of total disability, followed by periods in which claimant’s physician opined that claimant could “attempt” light duty work. We conclude the combination of medical evidence and the testimony of the vocational specialists constitutes competent substantial evidence which supports the award of temporary total disability benefits.
The fourth issue concerns the failure of the judge of compensation claims to address Dr. Newman’s findings. The record contains an office note dated January 31, 1989, prepared by Dr. Newman. Since this office note was attached to Dr. Cauthen’s deposition, the judge of compensation claims was entitled to consider the views expressed in the office note as incorporated within the medical evidence adduced from Dr. Cauthen. Dr. Newman’s opinion that claimant could perform light duty work was consistent with the opinions expressed by Dr. Cauthen. Consequently, a separate discussion of Dr. Newman’s office note was unnecessary in this case.
The fifth issue raised by the employer concerns the award of penalties in connection with the employer’s failure to pay temporary total disability benefits. Although the employer filed timely notices to controvert each claim for wage loss benefits, the record contains no notice to controvert the claim for temporary total disability benefits filed July 13, 1992.[2] The failure to file a timely notice to controvert a claim for a certain class of benefits may subject an employer or carrier to penalties. § 440.20(6), Fla.Stat. (1987); Woolworth Restaurant v. Cubillos, 608 So.2d 895 (Fla. 1st DCA 1992).
While the employer in this case does not dispute that temporary total disability benefits were claimed, the only record documentation of such claim is in the application for hearing and pretrial stipulation. The application and pretrial stipulation also contain the employer’s denial of all benefits claimed. Since the record does not contain a formal claim for benefits, it appears the employer was not required to file a notice to controvert temporary total disability benefits, beyond the general denial listed in the defense section of the application for hearing. Therefore, the award of penalties for failure to pay benefits for certain periods of temporary total disability must be reversed.
On cross-appeal, the claimant asserts error in the failure of the judge of compensation claims to award temporary total disability benefits for the period prior to the employer’s job search notice to claimant, or until such time as claimant was notified that his physician felt he could work. Claimant implicitly contends that the date of maximum medical improvement should be extended until November 23, 1993, the date of Dr. Sutterlin’s deposition, as marking the date at which it became clear there would be no further improvement in claimant’s condition. The argument advanced by claimant is consistent with the rationale of Mobley v. Jack & Son Plumbing, 170 So.2d 41 (Fla.1964).[3] Nevertheless, the record in this case is clear that claimant was cognizant that his physicians recommended that he attempt light duty work, and claimant was apprised clearly *1266 of his duty to conduct a job search. In these circumstances, claimant cannot rely upon the line of cases which hold the work search requirement is waived when the record reflects the employer did not expressly advise the claimant of his or her obligation to conduct a work search. See, e.g., Nickolls v. University of Florida, 606 So.2d 410, 413 (Fla. 1st DCA 1992); Bass v. Sarasota County Commissioners, 596 So.2d 1229,1231 (Fla. 1st DCA 1992); Ninia v. Southwest Bottlers, 547 So.2d 966, 968 (Fla. 1st DCA 1989).
Accordingly, we reverse that portion of the appealed order which awards penalties on unpaid temporary total disability benefits for the periods of November 1, 1988, through February 19, 1992, and February 19, 1992 through May 21,1992. In all other respects, the subject order is affirmed.
BOOTH and MINER, JJ., concur.

. In making this determination, Judge Hudson rejected the employer's assertion that Judge Douglas' prior finding as to maximum medical improvement was not binding. Rather, Judge Hudson determined that the prior ruling on this point was the law of the case.

. The initial claim was for permanent total disability benefits. Judge Douglas concluded the medical evidence recommending further evaluation indicated claimant was temporarily totally disabled, and awarded benefits accordingly. Since that class of benefits had not been claimed or placed at issue, the award was reversed. Florida Power Corporation v. Hamilton, 617 So.2d 333, 334 (Fla. 1st DCA 1993) {Hamilton I).

. In Mobley, surgery was recommended for the injured claimant. Four days later, the claimant decided against surgery. The court held that all treatment furnished from the date the claimant advised his physician he had decided against recommended surgery was merely supportive or palliative. Since there was no improvement in Mobley’s condition after the date he decided against surgery, the court designated that date as the date of maximum medical improvement which accorded with logic and reason.